IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DEBRA A. P., | |
| Plaintiff, | CV 18-125-M-JCL |
| vs. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383(c). Plaintiff alleges disability since July 1, 2014, due to rheumatoid arthritis, depression, anxiety, bulging disks, hyper flexive joint disease, chronic pain, chronic fatigue, chronic back spasms. (Doc. 6 at 648). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction

1

vests with this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff was 47 years old on her alleged onset date, and 50 years old at the time of the ALJ's decision in May 2017.

I. **Standard of Review**

"As with other agency actions, federal court review of social security determinations is limited." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035,

1038 (9th Cir. 2008) (quoiting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## II.     **Burden of Proof**

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (quoting 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). At step two, the ALJ must determine whether the claimant has any impairments that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R.

§§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, however, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v).

### III. Discussion

The ALJ found at step one that Plaintiff met the Act's insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since her July 1, 2014, alleged onset date. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, inflammatory arthritis, and anklyosing arthritis. The ALJ concluded at step three that Plaintiff did not have an impairment or combination of impairments that

met or medically equaled any impairment described in the Listing of Impairments. The ALJ further found that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the severity of those symptoms were not entirely consistent with the medical and other evidence of record. The ALJ determined that Plaintiff had the residual functional capacity to perform a range of light work. The ALJ concluded at step four that Plaintiff could not perform any past relevant work, but found her not disabled at step five because there were other jobs in the national economy that she could perform. (Doc. 6, at 536-546).

Plaintiff argues the ALJ's decision is not supported by substantial evidence, and raises four issues on appeal. First, Plaintiff contends the ALJ erred by finding that she did not meet or equal the criteria of Listing 14.09 for disability based on inflammatory arthritis. Second, Plaintiff argues the ALJ did not provide sufficiently clear and convincing reasons for discounting her subjective symptom testimony. Third, Plaintiff maintains the ALJ erred by not giving more weight to various treating physician opinions and instead crediting the opinions of the state agency physicians. Finally, Plaintiff argues the ALJ erred in finding her not disabled at step five because the residual functional capacity finding and resulting hypothetical question to the vocational expert were incomplete.

5

## A. Listed Impairments

Plaintiff argues the ALJ erred at step three by finding that she did not satisfy the criteria for presumptive disability under Listing 14.09(A)(1) and (2) for inflammatory arthritis.

At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. P. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).

To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404 1526(a). The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that her

6

impairments meet or medically equal all of the criteria of a listed impairment. See *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Listing 14.09(A) requires a diagnosis of inflammatory arthritis with persistent inflammation or persistent deformity of: (1) one or more major peripheral weight bearing joints resulting in the inability to ambulate effectively or (2) one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively. 20 C.F.R Part 404, Subpart P, Appendix 1, Listing 14.09(A)(1) and (2).

The inability to ambulate effectively means an extreme limitation of the ability to walk, and "is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities." 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00B2b. The inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities, including but not limited to, the inability to prepare a simple meal and feed oneself, and the inability to take care of personal hygiene. 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00B2c.

The ALJ found that Plaintiff did not meet or equal the criteria of Listing 14.09A because there was no evidence that she had arthritis with persistent

inflammation or persistent deformity of one or more major peripheral weight bearing joints resulting in the inability to ambulate effectively, or of one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively. (Doc. 6, at 541).

Plaintiff contends the ALJ did not adequately explain the basis for these findings. But an ALJ is not required, "as a matter of law, to state why a claimant failed to satisfy every different section of the Listing of Impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). The ALJ thoroughly evaluated the medical and other evidence of record when assessing Plaintiff's residual functional capacity, thereby "providing an adequate statement of the foundation on which the ultimate factual conclusions are based." *Gonzalez*, 914 F.2d at 1201.

While the ALJ was not required to provide more detailed step-three findings, whether those findings are supported by substantial evidence is a different issue. With respect to Listing 14.09(A)(1), Plaintiff argues the ALJ overlooked evidence showing that she is unable to ambulate effectively due to an arthritic deformity in her right foot. In particular, Plaintiff points to two pages of treatment notes and three x-rays from May 2014 when she was seen by Dr. Karl Mangold for chronic pain in her right foot. Dr. Mangold identified bony abnormalities in two joints and recommended conservative care. (Doc. 6, at 825-830). Plaintiff also cites a July

8

2015 treatment note from a different provider reflecting that she was suffering from back and leg pain. (Doc. 6, at 923).

The ALJ cited these records in her evaluation of the medical evidence (doc. 6, at 543-544) along with other evidence demonstrating that, notwithstanding her right foot joint deformities, Plaintiff had intact motor functioning, normal balance, normal gait, normal coordination, normal motor functioning, and active pain free range of motion in her lumbar, hips, knees, and ankles. (Doc. 6, at 539, 925. 938, 955). The ALJ reasonably weighed the medical evidence and found it did not establish the inability to ambulate effectively.

With respect to Listing 14.09(A)(2), Plaintiff argues the ALJ overlooked evidence demonstrating that she was unable to perform fine and gross movements effectively. She relies on notes from two appointments with Dr. Melody Nelson in July and October 2012 mentioning tendonitis in both elbows, and moderate synovitis in the wrist and finger joints. (Doc. 6, at 863, 866). But these records do not address Plaintiff's ability to perform fine and gross movements or identify any specific limitations. The ALJ discussed Dr. Nelson's treatment records, which showed that Plaintiff was in no acute distress during examinations but had some intermittent tenderness upon palpation in her finger joints. (Doc. 6, at 543, 833).

The ALJ reasonably weighed Dr. Nelson's records along with the rest of the medical evidence in finding that Plaintiff did not satisfy Listing 14.09(A)(2).

Plaintiff further argues that her subjective testimony shows she is unable to ambulate effectively or perform fine and gross movements effectively. For example, Plaintiff testified that her fingers "don't always move right" and she "can't always grasp things" or turn them because she has no "muscle grip or strength" in her fingers. (Doc. 6, at 561). Plaintiff explained that standing for 15 to 20 minutes causes her right foot to swell and results in so much pain that she cannot walk. (Doc. 6, at 561-62). Plaintiff further testified that she uses a cane on a daily basis, both inside and outside her home to avoid falling. (Doc. 6, at 562). Plaintiff argues this testimony supports a finding that she satisfies the criteria of Listing 14.09(A). As discussed below, however, the ALJ provided sufficiently clear and convincing reasons for discounting Plaintiff's subjective testimony.

The Court thus concludes that the ALJ's step-three analysis is supported by substantial evidence and free of error.

### B. Medical Opinions

Plaintiff argues the ALJ overlooked or failed to properly discount medical opinion evidence provided her treating physicians and erred by instead relying on the opinions of the state agency reviewing physicians.

Most of the evidence Plaintiff points to was not part of the record at the time of the ALJ's decision, however, and was instead submitted to the Appeals Council in support of her request for review. (Doc. 6, at 34, 45, 48-49, 54, 61, 79, 84, 91, 94, 102, 109, 110, 112, 132, 203, 218, 224, 249, 386). Because this evidence was not before the ALJ when she issued her decision, the ALJ did not err by failing to consider it.

Of the evidence Plaintiff cites to, the only records actually before the ALJ were treatment notes from Dr. Karl Mangold dated May 20, 2014, and treatment notes from Dr. Melody Nelson dated September 27, 2013 and March 3, 2015. (Doc. 6, at 826-27; 833; 847). While these treatment notes document three of Plaintiff's many medical visits, they do not provide any specific functional assessments or medical opinions. The ALJ cited generally to Dr. Mangold's and Dr. Nelson's records to support her assessment Plaintiff's residual functional capacity and was not required to specifically discuss these particular treatment notes in more detail. See *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that an "ALJ does not need to discuss every piece of evidence" and is "not required to discuss evidence that is neither significant or probative").

As noted above, the rest of the evidence Plaintiff cites to was submitted for the first time to the Appeals Council. If a claimant submits additional evidence to

the Appeals Council, and the Appeals Council "considers" that "evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Commissioner of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012).

"Consider" is a term of art in this context. See *Ruth v Berryhill*, 2017 WL 4855400, *8-9 (D. Or. Oct. 26, 2017) (discussing the difference between the Appeals Council "looking at" new evidence as opposed to "considering" it). Before January 17, 2017, the Appeals Council was required to "consider" additional evidence provided it was new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b) (2016). Effective January 17, 2017, Section 404.970(b) now provides that the Appeals Council will only "consider" additional evidence if a claimant shows good cause for not submitting the evidence up to five days before the hearing with an ALJ. 20 C.F.R. § 404.970(b) (2019). Where good cause is shown, the Appeals Council will review the case if the additional evidence is "new, material, and relates to the period on or before the date of hearing decision, and there is a reasonable probably that the additional evidence would change the outcome of the decision. 20 C.F.R §

404.970(a)(5).

The Appeals Council "looked" at the additional evidence Plaintiff submitted, divided it into three categories, and made three findings. (Doc. 6, at 6). The Appeals Council's second finding relates to the medical records Plaintiff cites in her brief. (Doc. 6, at 6). In particular, the Appeals Council found that evidence from Western Montana Clinic dated March 20, 2003 to December 7, 2016, and Blue Mountain Clinic, dated January 18, 2017 to April 25, 2017 did "not show a reasonable probability that it would change the outcome of the decision." (Doc. 6, at 6). The Appeals Council stated that it "did not consider and exhibit this evidence." (Doc. 6, at 6). But whether the Appeals Council actually "considered" this evidence, thereby making it part of the administrative record is not entirely clear.

Although the Appeals Council stated that it "did not consider and exhibit this evidence," the fact that the Appeals Council found "the evidence does not show a reasonable probability that it would change the outcome of the decision" suggests that it did in fact "consider" the evidence. And contrary to the Appeals Council's statement that it did not "exhibit this evidence," the evidence is included in the administrative record. (Doc. 6, at 38-527). This evidence is thus reviewable by the Court in determining whether the ALJ's decision is supported by substantial

13

evidence. See *Williams v. Berryhill*, 2018 WL 6737511, *3 (W.D. Wash. Apr. 19, 2018).

This evidence consists of medical records from Western Montana Clinic between March 2003 and December 2016, and from Blue Mountain Clinic between January 2017 and April 2017. (Doc. 6, at 38527). These records include treatment notes from several physicians, including Dr. Nelsen and Dr. Eric Ravitz. Plaintiff string cites several pages of treatment notes which she claims show that she suffers from a progressively disabling arthritic condition, which has been unsuccessfully treated with a variety of medications. (Doc. 6, at 34, 45, 48-49, 54, 61, 79, 84, 91, 94, 102, 109, 110, 112, 132, 203, 218, 224, 249, 386).

These medical records essentially reflect what the ALJ found – that Plaintiff's inflammatory arthritis was a severe impairment that significantly limited her ability to do basic work-related activities. Consistent with the ALJ's decision, these records further show that Plaintiff's physicians changed and adjusted her medications as needed to manage her symptoms. They do not, however, contain any specific functional assessments or medical opinions regarding Plaintiff's limitations. And contrary to Plaintiff's characterization, the records she cites to do not establish that her medical treatments were unsuccessful in minimizing her symptoms. Absent some functional assessment or medical opinion that contradicts

the ALJ's residual functional capacity assessment, the Court finds that the additional evidence submitted to the Appeals Council does not change the fact that the ALJ's decision is supported by substantial evidence.

The ALJ thoroughly discussed the medical evidence in the record at the time of her decision, and permissibly relied on the opinion of nonexamining state agency physician Dr. Tim Schofield in finding that Plaintiff had the residual functional capacity to perform a limited range of light work. To the extent Plaintiff argues generally that the ALJ did not provide sufficient reasons for rejecting certain medical opinions as set forth in the treatment notes that were part of the record at the time of ALJ's decision, she does not explain what opinions she is referring to or present any specific supporting argument.

### C. Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide sufficiently clear and convincing reasons for discounting her subjective symptom testimony.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Plaintiff met her initial burden because she produced evidence that she has medically determinable mental impairments that could reasonably be expected to cause her alleged symptoms. (Doc. 6, at 37). The ALJ then found that Plaintiff's subjective "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 6, at 543).

Plaintiff argues the ALJ erred by discounting her testimony only on the basis that her medical providers found she was "pleasant" during her examinations. But the ALJ did not cite this as a reason for discounting Plaintiff's allegations. Rather, she mentioned Plaintiff's "pleasant" demeanor in the context of evaluating the four areas of mental functioning identified in the paragraph B criteria of the listings for mental disorders. (Doc. 6, at 539).

Contrary to Plaintiff's argument, the ALJ provided sufficiently clear and convincing reasons for discounting Plaintiff's subjective complaints of disabling

pain and limitations. To begin with, the ALJ found that Plaintiff's reports of severe functional limitations were not consistent with the medical evidence. For example, while Plaintiff reported using a cane all the time and having difficulty grasping and turning things due to lack of grip strength, the ALJ noted that during medical exams she did not use any assistive devices or have any identifiable problems with the use of her hands and fingers. (Doc. 6, at 542-543). The ALJ further observed that Plaintiff's report of severe foot pain was not consistent with overall findings that her gait and balance were normal. (Doc. 6, at 543). The ALJ permissibly discounted Plaintiff's testimony in part because it was not consistent with the medical evidence. See *Carmickle v. Comm'r, soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects").

The ALJ further found Plaintiff's testimony as to the severity of her pain was undermined by records showing that she often reported good management of her pain symptoms. (Doc. 6, at 895- 912). In the records cited by the ALJ, Plaintiff advised Dr. Ravitz that she felt "like her pain management strategy [was] good" (doc. 6, at 897), that her pain was "under excellent control" (doc. 6, at 909), and

17

she was "very happy" (doc. 6, at 898) and "satisfied" (doc. 6 at 899) with her pain management medications. The ALJ properly considered the effectiveness of medication in controlling pain when assessing Plaintiff's subjective testimony. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

Plaintiff does not specifically address the ALJ's findings or develop any argument that ALJ's reasons for discounting Plaintiff's testimony are not supported by substantial evidence. Having reviewed the record as whole, the Court finds that the ALJ provided sufficiently clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony.

### D. Vocational Expert

Plaintiff argues the ALJ's residual functional capacity finding and the resulting hypothetical question were incomplete, and the vocational expert's testimony consequently had no evidentiary value for purposes of satisfying the ALJ's step five burden of demonstrating that Plaintiff could perform other work in the national economy. In particular, Plaintiff maintains the ALJ's hypothetical question did not adequately account for her pain and should have included "impacts of hand restrictions." (Doc. 9, at 25-26).

As discussed above, however, the ALJ properly discounted Plaintiff's subjective testimony as to the severity of her pain and her functional limitations,

including the use of her hands and fingers. To the extent the ALJ accepted that Plaintiff's impairments caused her some pain, the ALJ took that into consideration in the residual functional capacity finding by limiting Plaintiff to a range of light work. With respect to hand restrictions, Plaintiff relies heavily on her own subjective testimony and does not identify any evidence in the medical record regarding any specific functional limitations that the ALJ allegedly overlooked.

For the reasons set forth above, the Court find that the ALJ was not required to include any additional imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found based on the vocational expert's testimony that Plaintiff was not disabled at step five.

**IV.  Conclusion**

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 2nd day of May, 2019.

_____
Jeremiah C. Lynch
United States Magistrate Judge